**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CITY OF SAN BUENAVENTURA,
          *Plaintiff-Appellant*,

          v.

THE INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA,
          *Defendant-Appellee*.

No. 10-56727

D.C. No.
2:09-cv-09098-
DSF-CW

OPINION

CITY OF SAN BUENAVENTURA,
          *Plaintiff-Appellant*,

          v.

GREAT LAKES REINSURANCE (UK)
PLC,
          *Defendant-Appellee*.

No. 11-55284

D.C. No.
2:10-cv-00227-
DSF-CW

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted
April 11, 2012—Pasadena, California

Filed June 26, 2013

Before: Andrew J. Kleinfeld and Milan D. Smith, Jr., Circuit Judges, and Algenon L. Marbley, District Judge.[*]

Opinion by Judge Kleinfeld

## SUMMARY[**]

### Insurance Law

The panel affirmed the district court's summary judgment in favor of insurers in a declaratory judgment action brought by the City of Buenaventura to establish insurance coverage in underlying condominium buyers' litigation against the City.

The panel held under California law that any occurrence or wrongful act alleged by the condominium buyers took place prior to the policy periods, and therefore there was no insurance coverage. The panel declined to extend the holding in *Montrose Chemical Corp. v. Admiral Ins. Co.*, 913 P.2d 878 (Cal. 1995) (holding that claims for pollutants deposited into the ground prior to the insurance policy period, but continuing to leach into soil and groundwater during the policy period, gave rise to insurance coverage), to this case to extend the period of insurance coverage.

---

[*] The Honorable Algenon L. Marbley, District Judge for the U.S. District Court for the Southern District of Ohio, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

David A. Shaneyfelt, Anderson, Kill, Wood, & Bender, P.C., Ventura, California, for Appellant.

Rosemary J. Springer, McCurdy & Fuller, LLP, Menlo Park, California, for Appellee Insurance Company of the State of Pennsylvania; Bruce Winkelman, Craig & Winkelman, LLP, Berkeley, California, for Appellee Great Lakes Resinsurance.

## OPINION

KLEINFELD, Senior Circuit Judge:

This is a declaratory judgment action to establish insurance coverage.

## FACTS

The City of San Buenaventura ("City") contracted with a developer to build condominium units for people of low and moderate income. Sale and resale prices were limited to ceilings governing the development.[1] Sales could not close until the City issued certificates of compliance with its affordable housing program.

---

[1] According to the parties' joint statement of facts, the "Covenants, Conditions, and Restrictions" governing the development, which were recorded, refer to Cal. Health & Safety Code § 50079.5, which limits "lower income households" to those qualifying for Section 8 housing. *See* 42 U.S.C.A. § 1437, *et. seq.* The Department of Housing and Urban Development sets the Section 8 income levels. The City's affordable housing program then publishes a list each year showing the maximum sales price for low income units.

In 2004, a number of buyers sued the City, the developer, and the developer's partners. The buyers alleged that they had bought low-income condominiums in 2001, and obtained certificates of compliance, without being told that their condominiums were subject to low-income ceilings. They also alleged that they had paid prices higher than the ceilings. The condominium buyers sought two forms of relief against the City. They sought a declaratory judgment that the City's affordable housing program restrictions did not apply to their condominiums. In the alternative, if the court found that restrictions did apply to their condominiums, they sought damages and a declaration of which restrictions applied. Their theory of damages was that the City failed adequately to review their sale documentation, issued erroneous certificates of compliance, and negligently failed to tell them about the low-income price ceilings. As a result, they claimed to have suffered financial damage to the extent of their overpayments and to the extent that they paid extra interest and property taxes because of the higher than permitted prices.

This appeal is consolidated from lawsuits brought by the City against two insurance companies. It is not an appeal of the lawsuits by the condominium buyers against the City and developers. The City bought general liability insurance policies from Great Lakes Reinsurance (UK) PLC ("Great Lakes"), covering July 2002 to July 2003, and from the Insurance Company of the State of Pennsylvania ("ICSOP"), covering July 2003 to July 2004. In both policies, the City self-insured for the first million dollars of liability, and the insurers covered liability exceeding one million up to ten million dollars.

In 2007, three years after the condominium buyers' litigation began, the City tendered this action to the two insurers, saying the City had exhausted its million dollar self-insured retention.  The tender letters do not say whether defense or indemnity or both are sought.  Both insurers rejected the City's claims, saying that the City's alleged negligence and wrongful conduct in connection with the sales occurred prior to their policy periods.  The City then sued each of the insurers.  The City's declaratory judgment actions to establish coverage claimed breach of contract and breach of the covenant of good faith and fair dealing.[2]  The City's complaints do not say whether its breach of contract claims are based on breach of the duty to defend, breach of the duty to indemnify, or both.

The district court granted summary judgment in favor of both insurers, because any occurrence or wrongful act alleged by the homeowners took place prior to the policy periods.

## ANALYSIS

We review the district court's grants of summary judgment de novo, and apply California law to our interpretation of the insurance policies.[3]  We reach the same conclusion as the district court.

It is undisputed that the City's alleged negligence occurred in 2001, prior to the policy periods.  The City argues

---

[2] The City later dropped its breach of the covenant of good faith and fair dealing claim against Great Lakes.

[3] *See Cort v. St. Paul Fire & Marine Ins. Cos., Inc.*, 311 F.3d 979, 983 (9th Cir. 2002).

that because the condominium buyers continue to suffer under the burden of having overpaid and having their resale prices restrained by a ceiling,[4] the "occurrence" has continued into the policy periods.   The core of the argument is an analogy to the California Supreme Court's decision in *Montrose Chemical Corp. v. Admiral Insurance Co.*[5]   That decision held that claims for pollutants deposited in the ground prior to the policy period, but continuing to leach into soil and groundwater during the policy period, gave rise to a duty to defend, because continuance of the property damage during the policy period gave rise to coverage.[6]

The City stretches *Montrose Chemical* too far.   The insured in *Montrose Chemical* had deposited chemical wastes prior to the policy period, but wastes were still there and causing more damage during the policy period.   Under California law, "property damage that is continuous or progressively deteriorating throughout several policy periods is potentially covered by all policies in effect during those periods."[7]   *State v. Continental Insurance Co.* explains that this kind of long tail on a tort frequently occurs "in the context of environmental damage and toxic exposure

---

[4] One set of buyers no longer operates under the low-income ceiling. The City agreed to re-designate their condominium as a moderate-income unit and allow them to sell under the moderate-income ceiling.

[5] *Montrose Chem. Corp. v. Admiral Ins. Co.*, 913 P.2d 878 (Cal. 1995).

[6] *Id.* at 880–83, 888.

[7] *State v. Cont'l Ins. Co.*, 281 P.3d 1000, 1005 (Cal. 2012) (quoting *Montrose Chem.*, 913 P.2d at 880).

litigation."[8]  *Continental* arose out of the State of California's negligent construction of a waste disposal site in the 1950s that resulted in continuous discharge of industrial wastes many years after the site was closed, and a federally ordered cleanup in 1998.[9]

   The policies in *Montrose Chemical* covered "property damage . . . caused by an occurrence . . . ."[10]  Property damage was defined as "physical injury to or destruction of tangible property *which occurs during the policy period* . . . ."[11]  The antecedent for "which" in the *Montrose Chemical* policies is "injury to or destruction of."  Thus under that policy, there was coverage if injury occurred during the policy period, even if the accident that caused it occurred prior to the policy period.  As *Montrose Chemical* explains,

> this policy language unambiguously distinguishes between the causative event—an accident or "continuous and repeated exposure to conditions"—and the resulting "bodily injury or property damage."  It is the latter injury or damage that must "occur" during the policy period, and "which results" from the accident or "continuous and repeated exposure to conditions."[12]

---

[8] *Id.*

[9] *Id.* at 1002–03.

[10] *Montrose Chem.*, 913 P.2d at 889.

[11] *Id.*

[12] *Id.* at 890.

By contrast, the Great Lakes policy language promises indemnification for loss caused by property damage "first arising out of an Occurrence during the Policy Period . . . ." That language is materially different from the *Montrose Chemical* policy language. The *Montrose Chemical* policies required only damages during the policy period, but the Great Lakes policy requires the occurrence causing the damage to have been during the policy period. Likewise, the ICSOP policy affords coverage for liability incurred because of "property damage arising out of an occurrence during the Policy Period." Perhaps the underwriters of these two policies had read *Montrose Chemical* and drafted around it to avoid similar exposure.

No occurrence is or could be alleged to have occurred during the Great Lakes or ICSOP policy period. The Great Lakes policy defines "occurrence" as "an accidental happening," which would fit the negligent failure to apply the affordable housing program properly when the condominium purchasers bought their units, but would not fit keeping the program in place. Similarly, the ICSOP policy defines "occurrence" as "an accident . . . which results in . . . property damage neither expected nor intended," phrasing applicable to the City's claimed errors at the time the condominiums were sold, but not to keeping the affordable housing program in force.

The City asserts that ICSOP has a duty to defend, and that therefore ICSOP is liable if the condominium buyers' complaints show the potential for coverage.[13] However, "if,

---

[13] *See Scottsdale Ins. Co. v. MV Transp.*, 115 P.3d 460, 466 (Cal. 2005) ("[T]hat the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where,

as a matter of law, neither the complaint nor the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance."[14]  Here, there is no duty to defend.  ICSOP was not given any information outside of the complaints suggesting a possibility of coverage, and the facts alleged and reasonably inferable from the complaints do not show any basis for potential coverage.  There is in this case neither a duty to defend, nor a duty to indemnify.[15]

The condominium buyers' complaints allege that they were damaged by the City's negligence when they purchased their units in early 2001, over a year prior to the 2002–2003 Great Lakes policy and two years prior to the 2003–2004 ICSOP policy.  They do not allege that they were wrongfully damaged by the City's affordable housing program, or that the program was in any way unlawful.  They merely ask that the program be suspended as to them because of the City's 2001 negligence.  And both policies expressly exclude coverage for declaratory or injunctive relief, so those claims by the condominium buyers cannot provide a basis for duties to defend or indemnify.

The City argues that leaving the affordable housing restrictions in place was a "wrongful act" that took place

---

under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability.").

[14] *Id.*

[15] *Certain Underwriters at Lloyd's of London v. Superior Court*, 16 P.3d 94, 102 (Cal. 2001) ("Where there is a duty to defend, there *may be* a duty to indemnify; but where there is no duty to defend, there *cannot be* a duty to indemnify.").

under the ICSOP policy, which provides coverage for "loss arising out of [the insured's] wrongful act that takes place during the Policy Period." "Wrongful act" is defined in the policy as "[a]ny actual or alleged error or misstatement, omission, negligent act, or breach of duty including misfeasance, malfeasance, and nonfeasance by [the insured] including, but not limited to, those constituted by . . . [a]ny negligent ministerial act . . . ." Just as leaving lawful housing policies on the books is not an "occurrence" resulting in property damage under either policy, it is also not a "wrongful act" as defined by the ICSOP policy.

The City would have us read "occurrence" more broadly, because the policies define "occurrence" as "including continuous or repeated exposure to substantially the same general harmful conditions" (Great Lakes), and "including continuous, repeated or related exposure to substantially the same general harmful conditions" (ICSOP). This language describes the kind of continuing event resulting in exposure to toxic waste discussed in *Montrose Chemical*[16] and *Continental*,[17] but not the kind of event claimed by the condominium buyers. They claim that they were harmed by the City's 2001 errors, not by any errors since. When a pollutant is deposited in the ground before the policy period, but leaches more toxins into the soil during the policy period, the subsequent leaching may itself be an occurrence.

> Under the insurance policy language at issue in *Montrose*, we determined that a continuous condition becomes an occurrence for the

---

[16] *Montrose Chem.*, 913 P.2d at 888.

[17] *Cont'l*, 281 P.3d at 1005.

purposes of triggering insurance coverage when 'property damage' results from a causative event consisting of 'the accident or continuous and repeated exposure to conditions.' The limitation on potential indemnity was that the damage must 'occur' during the policy period and ' . . . result[]' from the accident or 'continuous and repeated exposure to conditions.'[18]

No such subsequent occurrence was or could be alleged here. The City's argument is essentially that failure to remedy a pre-coverage occurrence is itself a continuing, subsequent occurrence.

The City's argument for extending *Montrose Chemical* to failure to provide a remedy for a past occurrence would imply an absurd result. Were the "continuous exposure" or "continuous damage" language in *Montrose Chemical* construed to apply to failure to remedy a discrete previous harm, then a 2001 automobile accident resulting in tort liability and as yet uncompensated would fall within the coverage of a policy sold in 2003 and covering only occurrences during the year 2003.[19] Such a construction would fall outside the reasonable expectations of the insured to such a policy,[20] and would enable the City to delay buying insurance until after it had incurred a tort liability, yet obtain

---

[18] *Id.* at 1006 (quotations marks and citation omitted).

[19] *Cf. Montrose Chem.*, 913 P.2d at 888.

[20] *See Bank of the West v. Superior Court*, 833 P.2d 545, 552 (Cal. 1992).

coverage for the pre-policy tort because the City had not compensated the victim. There may be circumstances where the *Montrose Chemical* and *Continental* rules apply outside the pollution context,[21] but this case is not one of them.

**AFFIRMED.**

---

[21] *See Borg v. Transamerica Ins. Co.*, 54 Cal. Rptr. 2d 811, 818–20 (Ct. App. 1996).